**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**WHITE PLAINS COURTHOUSE**

| | |
|---|---|
| Joanne Reyes, individually and on behalf of all others similarly situated, | 7:22-cv-06722 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Upfield US Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.      Upfield US Inc. ("Defendant") manufactures, labels, markets, and sells vegetable oil spread promoted as "Made With Almond Oil" with pictures of almond ingredients under the Country Crock brand ("Product").



2.      Relevant front label representations include "Plant Butter," "Dairy Free," "79% Plant-Based Oil Spread," and a description that the Product is made "With Almond Oil"

accompanied by pictures of freshly picked almonds, an almond flower and almond leaves.



## I.    VEGETABLE OIL SPREADS

3.    Since the dawn of recorded history, humans have consumed butter, made from cream and salt, on a farm.

4.    For the past 150 years, butter has competed against yellow-colored blends of vegetable oils with 80% or more fat, through the product known as margarine.

5.    Where these blends are less than 80% fat, they are referred to as "spreads."

6.    In the context of margarine and spreads, vegetable oil traditionally refers to oils such as corn oil, canola oil, cottonseed oil, palm oil, safflower oil, sesame oil, soybean oil and sunflower oil.

7.    According to the USDA, annual consumption of margarine and spreads recently reached its lowest level since the 1940s, at three pounds per person.

8.    In contrast, the average person consumes six pounds of butter per year, the highest level in 50 years.

9. There are several reasons for these changes.

10. First, as confirmed by research firm Mintel, "consumers [are] increasingly turn[ing] to butter over margarine/spreads for its natural appeal," and a "preference for less processed foods."

11. Butter is made with simple, natural ingredients like cream and salt.

12. Butter is minimally processed, made by churning cow's milk, without chemicals or additives.

13. In contrast, vegetable oils are heavily refined in the presence of chemical catalysts such as nickel and cadmium.

14. Second, consumers are more aware of the healthier profile of butter compared to vegetable oils.

15. Butter contains heart healthier fats, while vegetable oils contain harmful trans fats, a result of hydrogenation and interesterification.

16. Butter also contains calcium, protein, and vitamins A and D.

17. Vegetable oils have no comparable nutritional value as a result of the intense processing needed to render them palatable.

18. Third, vegetable oil spreads are considered ultra-processed foods ("UPF"), frowned upon by nutrition authorities and public health bodies.

19. To counter this decline of vegetable oil spreads, companies are increasingly incorporating alternative oils like almond oil to meet consumer demand.

## II.   INCREASED POPULARITY OF ALMONDS

20. Americans' almond consumption has grown several hundred percent in the past two

decades, overtaking peanuts as the most consumed nut.[1]

21.     One of the reasons is because almonds contain "healthy fats," which science and nutrition have concluded are beneficial to health.

22.     Almonds are a good source of protein, which studies show contributes to the decline in overall mortality and improvement of heart health.

23.     A handful of almonds contains roughly 10 percent of the recommended intakes for protein and fiber, and macronutrients such as vitamins and minerals.

24.     Almonds are widely considered the gold standard of nuts by many nutrition experts.

25.     One prominent consultant declared that "Almonds are better [than other nuts] due to their greater percentage of minerals, vitamin E and phytonutrients," with "[fewer] calories, more fiber and a better glycemic score than peanuts making them better for weight loss, diabetics and sustained energy throughout the day."

26.     Companies have responded to consumer demand and growing evidence of benefits of almonds by making them the key ingredients in packaged foods, in various forms.[2]

## III.   ATTRIBUTES OF ALMOND OIL

27.     Almond oil is obtained by grinding and pressing fresh almonds at low temperatures without additives or harsh processing.

28.     Whereas vegetable oils have no flavor or aroma, almond oil is known for its light nutty taste.

29.     Over the past ten years, almond oil has increased in popularity consistent with the overall growth in almond products.

---

[1] Roberto A. Ferdman The rise of the American almond craze in one nutty chart, Washington Post, Aug. 6, 2014. The Peanut Board has questioned the statistics used to conclude almond consumption exceeds peanuts.
[2] Jill Russell Qualizza, Almonds Win 2013 Popularity Contest, Nov. 5, 2013; Joshua Minchin, Why are Consumers and Manufacturers Choosing Almonds, New Food, Feb. 18, 2022.

30.     Almond oil has high levels of heart-healthy fats, such as polyunsaturated and monounsaturated fat, which help control cholesterol.

31.     Almond oil is an excellent source of phytosterols and minerals such as calcium and magnesium.

32.     Almond oil contains relatively significant amounts of the antioxidant vitamin E, which supports heart and cardiovascular health by reducing the oxidation of LDL ("low-density lipoprotein") cholesterol.

33.     This antioxidant helps protect cells from free radicals, thereby promoting immunity.

34.     Another result is fighting off chronic and degenerative illnesses like rheumatoid arthritis and cardiovascular disease.

35.     Studies show that oils rich in monounsaturated and polyunsaturated fats, like almond oil, can help control blood sugar in people with type 2 diabetes.

36.     One study concluded that subjects who consumed almond oil at breakfast had lower blood sugar levels after eating and throughout the day than those who did not eat almond oil.

37.     Participants also were not as hungry after eating, resulting in less consumption of food during the day.

## IV.   "MADE 'WITH ALMOND OIL'" IS MISLEADING

38.     Defendant markets the Product to the increasing numbers of Americans seeking to consume staple foods with ingredients known for providing health benefits, like almond oil.

39.     By representing the Product as "Made With Almond Oil" and made "With Almond Oil," with pictures of almond ingredients, consumers will expect a significant, non-*de minimis* amount of almond oil, in relative and absolute amounts to all oils used.

40.     However, the ingredient list reveals a negligible amount of almond oil in relative and

absolute amounts to all oils used, less than all other oils.

INGREDIENTS: BLEND OF PLANT-BASED OILS (PALM FRUIT, PALM KERNEL, CANOLA AND ALMOND OIL), WATER, SALT, PEA PROTEIN, SUNFLOWER LECITHIN, CITRIC ACID, VITAMIN A PALMITATE, NATURAL FLAVOR, BETA CAROTENE (COLOR).

**INGREDIENTS:** BLEND OF PLANT-BASED OILS (PALM FRUIT, PALM KERNEL, CANOLA AND ALMOND OIL), WATER, SALT, PEA PROTEIN, SUNFLOWER LECITHIN, CITRIC ACID, VITAMIN A PALMITATE, NATURAL FLAVOR, BETA CAROTENE (COLOR).

41.    The first ingredient is a blend of four oils, with the most predominant, palm fruit, followed by palm kernel and canola oil.

42.    The fourth and least predominant is almond oil.

43.    The small relative and absolute amount of almond oil is misleading in light of the front label stating the Product is "Made With Almond Oil" and made "With Almond Oil," with pictures of almond ingredients.

44.    The amount of almond oil is insufficient to confer any of the health benefits associated with almond oil or deliver the taste of almond oil.

45.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

46.    Plaintiff paid more for the Product based on the representations, and had she known the truth, she would not have bought it or would have paid less.

47.    As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $3.99 per 10.5 oz, excluding tax and sales, higher than similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

48.     Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C.

§ 1332(d)(2).

49.     The aggregate amount in controversy exceeds $5 million, including any statutory and

punitive damages, exclusive of interest and costs.

50.     The number of purchasers of the Product during the statutory period exceed 100,

because the Product has been sold at thousands of locations (and online) in the States covered by

the classes Plaintiff seeks to represent, with the representations challenged here, for several years.

51.     Plaintiff Joanne Reyes is a citizen of New York.

52.     Defendant Upfield US Inc. is a Delaware corporation with a principal place of

business in Hackensack, Bergen County, New Jersey

53.     Plaintiff and Defendant are citizens of different states.

54.     Venue is in this District because Plaintiff resides in this District and the actions

giving rise to the claims occurred within this District, including Plaintiff's purchase, consumption

and exposure to the Product's labeling and awareness of these issues.

Parties

55.     Plaintiff Joanne Reyes is a citizen of Yonkers, New York, Westchester County.

56.     Defendant Upfield US Inc. is a Delaware corporation with a principal place of

business in Hackensack, New Jersey, Bergen County.

57.     Defendant is the world's largest manufacturer of margarines and vegetable oil

spreads.

58.     Defendant promotes its "plant-based" products as natural and better for the

environment than dairy competitors, due to lower carbon emissions and health benefits from

ingredients like almond oil.

59. The Country Crock brand is one of the oldest and most respected producers of vegetable oil spreads.

60. The Product is available to consumers from third-parties such as grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

61. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at stores including ShopRite, 25-43 Prospect St, Yonkers, NY 10701, between January 21, 2022, and January 28, 2022, among other times.

62. Plaintiff believed and expected the Product contained a non-*de minimis* amount of almond oil, in absolute terms, and relative to other oils used, as opposed to containing mainly palm and canola oils, because that is what the representations and omissions on the front label said and implied.

63. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

64. Plaintiff is one of many consumers who seeks to consume more almond oil for reasons including attention to their health, nutrition, and wellness.

65. Plaintiff is one of the many consumers who avoid traditional vegetable oils such as palm oil and canola oil, because of their detrimental effects on their health and the surrounding environment.

66. Plaintiff is one of the many consumers who is willing to pay, and does pay, more for foods containing a non-*de minimis* amount of almond oil, in absolute terms, and relative to other

oils used, as opposed to containing mainly palm and canola oils.

67.    Plaintiff bought the Product at or exceeding the above-referenced price.

68.    Plaintiff relied on the front label representations including "Made With Almond Oil,"
the description that the Product was made "With Almond Oil," pictures of almond ingredients,
"Plant Butter," and "Plant-Based."

69.    Plaintiff would not have purchased the Product if she knew the representations were
false and misleading.

70.    Plaintiff chose between Defendant's Product and other similar products which were
represented similarly, but which did not misrepresent their attributes and/or lower-priced products
which did not make the statements and claims made by Defendant.

71.    The Product was worth less than what Plaintiff paid and she would not have paid as
much absent Defendant's false and misleading statements and omissions.

Class Allegations

72.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who
> purchased the Product during the statutes of limitations for
> each cause of action alleged.

> **Consumer Fraud Multi-State Class:** All persons in the
> States of Alaska, Maine, New Mexico, North Carolina,
> Wyoming, Nebraska, and Georgia who purchased the
> Product during the statutes of limitations for each cause of
> action alleged.

73.    Common questions of law or fact predominate and include whether Defendant's
representations were and are misleading and if Plaintiff and class members are entitled to damages.

74.    Plaintiff's claims and basis for relief are typical to other members because all were
subjected to the same unfair and deceptive representations and actions.

75.    Plaintiff is an adequate representative because her interests do not conflict with other

9

members.

76. No individual inquiry is necessary since the focus is only on Defendant's practices and the classes are definable and ascertainable.

77. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

78. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

New York General Business Law §§ 349 and 350

(Consumer Protection Statute)

79. Plaintiff incorporates by reference all preceding paragraphs.

80. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

81. Plaintiff relied on the representations and omissions to believe the Product contained a non-*de minimis* amount of almond oil, in absolute terms, and relative to other oils used, as opposed to containing mainly palm and canola oils.

82. Plaintiff paid more for the Product based on these representations, and she would not have purchased it or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(Consumer Fraud Multi-State Class)

83. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

84. The members of the Consumer Fraud Multi-State Class reserve their rights to assert

their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

85.    Defendant intended that the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

86.    As a result of Defendant's artifice, and unfair or deceptive acts, the Consumer Fraud Multi-State Class sustained damages in the same way as Plaintiff.

<u>Breaches of Express Warranty,<br>Implied Warranty of Merchantability/Fitness for a Particular Purpose and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

87.    The Product was manufactured, identified, distributed, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained a non-*de minimis* amount of almond oil, in absolute terms, and relative to other oils used, as opposed to containing mainly palm and canola oils.

88.    Defendant directly marketed the Product to Plaintiff through advertisements and marketing in various forms of media including print circulars, direct mail, targeted digital advertising, and/or on the packaging.

89.    Defendant knew product attributes that potential customers like Plaintiff were seeking, such as a non-*de minimis* amount of almond oil, in absolute terms, and relative to other oils used, as opposed to containing mainly palm and canola oils, and developed its marketing and labeling to directly meet those needs and desires.

90.    Defendant was aware of consumer demand for almond oil compared to other oils, such as palm and canola oils.

91.    Defendant's representations were conveyed in writing and promised the Product would be defect-free, and Plaintiff understood this meant it contained a non-*de minimis* amount of

almond oil, in absolute terms, and relative to other oils used, as opposed to containing mainly palm and canola oils.

92.    Defendant's representations affirmed and promised that the Product contained a non-*de minimis* amount of almond oil, in absolute terms, and relative to other oils used, as opposed to containing mainly palm and canola oils.

93.    Defendant described the Product so Plaintiff believed it contained a non-*de minimis* amount of almond oil, in absolute terms, and relative to other oils used, as opposed to containing mainly palm and canola oils, which became part of the basis of the bargain that it would conform to its affirmations and promises.

94.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

95.    This duty is based on Defendant's outsized role in this market, a trusted company, known for its high-quality margarines and vegetable oil spreads, honestly marketed to consumers.

96.    Plaintiff recently became aware of Defendant's breach of the Product's warranties.

97.    Plaintiff provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the express and implied warranties associated with the Product.

98.    Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

99.    The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

100.    The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the

promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained a non-*de minimis* amount of almond oil, in absolute terms, and relative to other oils used, as opposed to containing mainly palm and canola oils.

101.   The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained a non-*de minimis* amount of almond oil, in absolute terms, and relative to other oils used, as opposed to containing mainly palm and canola oils, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

102.   Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

103.   Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained a non-*de minimis* amount of almond oil, in absolute terms, and relative to other oils used, as opposed to containing mainly palm and canola oils.

104.   Defendant possesses specialized knowledge regarding the relative amount of almond oil compared to the other oils used in the Product.

105.   The records Defendant is required to maintain provided it with actual and/or constructive knowledge of the falsity and/or inaccuracy of the representations.

Unjust Enrichment

106.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff, who seeks restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the Classes;

2. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims, and restitution and disgorgement;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   August 8, 2022

                                                              Respectfully submitted,

                                                              Sheehan & Associates, P.C.
                                                              /s/Spencer Sheehan
                                                              60 Cuttermill Rd Ste 412
                                                              Great Neck NY 11021
                                                              Tel: (516) 268-7080
                                                              spencer@spencersheehan.com