UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOANNE REYES, *individually and on behalf of all others similarly situated*,

                                        Plaintiff,

                v.

UPFIELD US INC.,

                                        Defendant.

No. 22-CV-6722 (KMK)

<u>OPINION & ORDER</u>

Katherine Lalor, Esq.
Theodore Hillebrand, Esq.
Spencer Sheehan, Esq.
Sheehan & Associates, P.C.
Great Neck & Middle Village, NY
*Counsel for Plaintiff*

Darci F. Madden, Esq.
Courtney J. Peterson, Esq.
Nora Faris, Esq.
Bryan Cave Leighton Paisner LLP
New York, NY & St. Louis, MO
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Joanna Reyes ("Plaintiff") brings this putative class action against Upfield US

Inc. ("Defendant"), alleging that the labeling on a variety of Defendant's Country Crock brand

plant butter is deceptive and misleading.  (*See generally* Compl. (Dkt. No. 1).)  Plaintiff brings

claims for damages against Defendant for (1) violation of §§ 349 and 350 of the New York

General Business Law ("GBL"), N.Y. G.B.L. §§ 349, 350; (2) common law breach of express

warranty; (3) common law fraud; and (4) common law unjust enrichment.  (*See id.* ¶¶ 79–106.)[1]

Before the Court is Defendant's Motion To Dismiss the Complaint (the "Motion").  (*See* Not. of

Mot. (Dkt. No. 18).)  For the foregoing reasons, the Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from the Complaint and are assumed to be true for the

purposes of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps.*

*Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Defendant is "the world's largest manufacturer of margarines and vegetable oil spreads,"

which has its principal place of business in Hackensack, New Jersey.  (*See* Compl. ¶¶ 56–57.)

Included in Defendant's product lines is a vegetable oil spread under the Country Crock Brand,

described as a plant butter "made with almond oil" or "with almond oil" (the "Product").  (*Id.*

¶¶ 1–2.)  As relevant to the instant Action, Defendant describes the Product using the following

representations on the Product's label: "Plant Butter," "Dairy Free," "79% Plant-Based Oil

Spread," and a description that the product is made "With Almond Oil."  (*Id.* ¶ 2.)  This

representation is accompanied by pictures of almonds, an almond flower, and almond

leaves.  (*Id.*)

---

[1] Plaintiff voluntarily withdrew her claims for breach of implied warranty and violations of the Magnuson Moss Warranty Act.  (*See* Letter from Katherine Lalor, Esq., to Court (October 13, 2022) (Dkt. No. 12).)





(*See id.* ¶¶ 1, 2.)

  Plaintiff alleges that the Product's advertisements are false and misleading because, "[b]y representing the Product as 'Made With Almond Oil' and made 'With Almond Oil,' with pictures of almond ingredients, consumers will expect a significant, non-de minimis amount of almond oil, in relative and absolute amounts to all oils used." (*Id.* ¶ 39 (italics omitted).) Instead, Plaintiff alleges that "the ingredient list reveals a negligible amount of almond oil in relative and absolute amounts to all oils used, less than all other oils." (*Id.* ¶ 40.) Specifically,

the Product lists as its first ingredient a "blend of plant-based oils," which is then described in

parenthesis by four oils: palm fruit, palm kernel, canola and almond oil.  (*See id.* ¶¶ 40–41.)

Plaintiff alleges that as the fourth listed ingredient, almond oil is "least predominant" among the

listed plant-based oils.  (*Id.* ¶ 42.)  Accordingly, Plaintiff alleges that the "small relative and

absolute amount of almond oil is misleading in light of the front label stating the Product is

'Made With Almond Oil' and made 'With Almond Oil,' with pictures of almond ingredients."

(*Id.* ¶ 43.)

Between January 21, 2022, and January 28, 2022, Plaintiff purchased the Product "on one

or more occasions" at various stores, including at ShopRite, 25-43 Prospect St, Yonkers, NY

10701, (*id.* ¶ 61), for a "premium price" of "no less than $3.99 per 10.5 oz, excluding tax and

sales," (*id.* ¶ 47).  Plaintiff alleges that she "believed and expected the Product contained a non-

de minimis amount of almond oil, in absolute terms, and relative to other oils used, as opposed to

containing mainly palm and canola oils, because that is what the representations and omissions

on the front label said and implied."  (*Id.* ¶ 62; *see also id.* ¶ 68.)  In purchasing the Product,

Plaintiff alleges she "relied on the words, terms coloring, descriptions, layout, placement,

packaging, tags, and/or images on the Product, on the labeling," and on statements made in

Defendant's marketing.  (*Id.* ¶ 63.)  Without this, Plaintiff alleges that she "would not have

purchased the Product if she knew the representations were false and misleading" and that "she

would not have paid as much absent Defendant's false and misleading statements and

omissions."  (*Id.* ¶¶ 69, 71.)

B.  Procedural History

Plaintiff filed her initial Complaint on August 8, 2022.  (*See* Compl.)  On October 7,

2022, Defendant filed a pre-motion letter in anticipation of filing a motion to dismiss the

Complaint.  (*See* Dkt. No. 10.)  Following Plaintiff's response to Defendant's pre-motion letter, (*see* Dkt. No. 12), the Court held a pre-motion conference on November 14, 2022, and set a briefing schedule, (*see* Dkt. (minute entry for November 14, 2022); Order (Dkt. No. 16)).

Pursuant to the briefing schedule, Defendant filed the instant Motion on December 15, 2022.  (*See* Not. of Mot.; Mem. of Law in Supp. of Mot. To Dismiss ("Def's Mem.") (Dkt. No. 19).)  Plaintiff filed her Opposition on January 17, 2023, (*see* Mem. of Law in Opp'n to Mot. To Dismiss ("Pl's Mem.") (Dkt. No. 20)), and Defendant filed its Reply on January 31, 2023, (*see* Def's Reply Mem. of Law in Supp. of Mot. To Dismiss ("Def's Reply") (Dkt. No. 21)).  Defendant also filed a notice of supplemental authority on May 23, 2023.  (*See* Dkt. No. 22.)

## II.  Discussion

### A.  Standard of Review

Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Not. of Mot.)  The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although, "once a claim has been stated adequately, it may be supported by

showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a

plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.*

at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible,

the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("[W]here the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second

alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79. ("Rule 8

marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior

era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions.").

　　　"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw all reasonable inferences in the plaintiff's favor," *Division 1181*, 9 F.4th at

95 (citation omitted).  Additionally, "when ruling on a Rule 12(b)(6) motion to dismiss," district

courts are directed to confine their consideration to "the complaint in its entirety, . . . documents

incorporated into the complaint by reference, and matters of which a court may take judicial

notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted); *see also*

*Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

　　　Finally, fraud claims—including common law fraud claims—are subject to the

heightened pleading standard set forth in Rule 9(b).  *See Matana v. Merkin*, 957 F. Supp. 2d 473,

484 (S.D.N.Y. 2013) ("[A] claim for common law fraud under New York law must satisfy the

requirements of the heightened pleading standard under Federal Rule of Civil Procedure 9(b)."

(collecting cases)).  Rule 9(b) provides: "In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  However, courts "'must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations,'" rather "'plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52, (2d Cir. 1995)).  "An inference is 'strong' if it is cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Pilkington N. Am. Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 492 (S.D.N.Y. 2020) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 176–77 (2d Cir. 2015)).  As explained by the Second Circuit, Rule 9(b) requires a Plaintiff to "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Loreley*, 797 F.3d at 171 (citation omitted).

    B.  Analysis

Defendant argues that (1) Plaintiff fails to state a plausible claim under the GBL because "the Product's representations are not misleading as a matter of law," (*see* Def's Mem. 4–13); (2) Plaintiff has failed to adequately allege an injury sufficient to sustain a GBL claim, (*see id*. at 13–14); (3) Plaintiff's common law claims fail to state a plausible or valid claim, (*see id*. at 14–22); (4) Plaintiff's state law claims are preempted, (*see id*. at 22–24); and (5) this Court lacks personal jurisdiction for any of Plaintiff's claims related to out-of-state Plaintiffs in the potential class action suit, (*see id*. at 24–25).  The Court addresses each argument in turn.

1.  New York General Business Law § 349 and § 350 Claims

"Section 349 [of the GBL] prohibits 'deceptive acts or practices in the conduct of any business, trade[,] or commerce,' whereas [§] 350 prohibits 'false advertising in the conduct of any business, trade[,] or commerce.'" *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (alterations omitted) (quoting N.Y. Gen. Bus. L. §§ 349, 350).  "'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to [§] 349,' and therefore the Court will merge its analysis of the two claims." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (citation omitted) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, n.1 (N.Y. 2002)); *see also Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021) (same); *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (noting that "courts have found that the scope of § 350 is as broad as that of § 349 . . . and that its essential elements are the same" (ellipses in original)).  To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Wynn*, 2021 WL 168541, at *2 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)); *see also Cosgrove*, 520 F. Supp. 3d at 575 (adopting the same standard); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (same).

a.  Consumer-Oriented Conduct & Injury

Defendant appears to concede—or at least, does not contest for purposes of its Motion—that Defendant's conduct was consumer-orientated.  (*See generally* Def.'s Mem.)  "A defendant engages in 'consumer-oriented' activity if [the company's] actions cause any 'consumer injury or harm to the public interest.'"  *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002)

(quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)).  This

requirement is liberally construed, *id.*, and "may be satisfied by showing that the conduct at issue

'potentially affect[s] similarly situated consumers,'" *Wilson v. Northwestern Mutual Insurance

Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (alteration in original) (quoting *Oswego Laborers' Local 214

Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)).  Here, Plaintiff

alleges that Defendant "manufactures, labels, markets, and sells" the Product "to consumers from

third parties such as grocery stores, dollar stores, warehouse club stores, drug stores,

convenience stores, big box stores, and online."  (*See* Compl. ¶¶ 1, 61.)  These allegations are

sufficient to satisfy the first element of Plaintiff's GBL claim.  *See Karlin v. IVF Am., Inc.*, 712

N.E.2d 662, 665 (N.Y. 1999) (observing that GBL §§ 349 and 350 "apply to virtually all

economic activity, and their application has been correspondingly broad" (footnote omitted)

(collecting cases)); *Sheth v. N.Y. Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (App. Div. 2000) (noting that

the "consumer-oriented" requirement may be satisfied "by a showing that the practice has a

broader impact on the consumer at large" (citation omitted)).

However, Defendant argues that Plaintiff has failed to adequately allege a cognizable

injury under the GBL.  (*See generally* Def's Mem. 13–15.)  "An actual injury claim under

[§§] 349 and 350 typically requires a plaintiff to allege that, on account of a materially

misleading practice, she purchased a product and did not receive the full value of her purchase."

*Duran*, 450 F. Supp. 3d at 350 (alterations and internal quotation marks committed) (quoting

*Daniel v. Mondelez Int'l, Inc.*, 278 F. Supp. 3d 177, 195 (E.D.N.Y. 2018)).  "A plaintiff can

show this injury by alleging 'an overpayment, or a price premium, whereby a plaintiff pays more

than she would have but for the deceptive practice.'"  *Id.* (quoting *Izquierdo v. Mondelez Int'l

Inc.*, No. 16-CV-4697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2017)).  However, "[t]o

allege injury under a price premium theory, a plaintiff must allege not only that [the] defendant[] charged a price premium, but also that there is a connection between the misrepresentation and any harm from, or failure of, the product." *Id.* (quotation marks and citation omitted); *see also Sabatano v. Iovate Health Scis. USA Inc.*, No. 19-CV-8924, 2020 WL 3415252, at *3 (S.D.N.Y. June 22, 2020) ("A plaintiff must also demonstrate reliance, which typically means he must point to a specific advertisement or public pronouncement upon which the consumer relied."); *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 288 (E.D.N.Y. 2009) ("In order to make a claim under [GBL § 350], a plaintiff must plead reliance on a false advertisement at the time the product was purchased." (citing *Andrew Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (App. Div. 2002))).  Typically, a plaintiff makes this allegation by asserting that a particular product was marketed as having a special quality, that the marketing enabled the company to charge a premium for the product, and that the plaintiff paid this premium and later discovered that the product "did not, in fact, have the marketed quality."  *Duran*, 450 F. Supp. 3d at 350–51 (collecting cases).

Here, Plaintiff alleges that she "bought the Product at or exceeding the above-referenced price" by "rel[ying] on the front label representations including 'Made With Almond Oil,' the description that the Product was made 'With Almond Oil,' pictures of almond ingredients, 'Plant Butter,' and 'Plant-Based.'"  (Compl. ¶¶ 67–68.)  Plaintiff also alleges that she "chose between Defendant's Product and other similar products which were represented similarly," and she "would not have purchased the Product if she knew the representations were false and misleading."  (*Id.* ¶¶ 69–70.)  Finally, Plaintiff alleges that "she would not have paid as much absent Defendant's false and misleading statements and omissions."  (*Id.* ¶ 71.)  At this early stage of the case, these allegations suffice to allege a price premium theory of injury.  *See Fishon*

*v. Peloton Interactive, Inc.*, No. 19-CV-11711, 2020 WL 6564755, at *10–11 (S.D.N.Y. Nov. 9, 2020) (allegations that the plaintiffs "would not have purchased the [product], or would not have purchased it on the same terms, [had] they kn[o]w[n] the truth," were sufficient to survive dismissal, because "[n]o more is necessary at this stage"); *Duran*, 450 F. Supp. 3d at 351 (finding that the plaintiff adequately pled a price premium theory of injury where he alleged that he and other customers "paid full price for the [p]roduct but received something inferior to what [the defendant] had promised, and that, had [the plaintiff] known that the [p]roduct [was inferior], he would not have purchased the [p]roduct, or would have only paid significantly less for it" (citations omitted)); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489, 2016 WL 4367991, at *14 (S.D.N.Y. Aug. 12, 2016) (allegation that the plaintiff "would not have paid the premium price he paid" for the product had he "known the truth" was sufficient to state injury based on price premium theory (citation and quotation marks omitted)); *Singleton v. Fifth Generation, Inc.*, No. 15-CV-474, 2016 WL 406295, at *10 (N.D.N.Y. Jan. 12, 2016) (finding that the plaintiff stated a claim under § 349 where he alleged that, had he "known 'the truth,'" he "would not have bought the vodka, or would have paid less for it" (footnote and quotation marks omitted)).

Defendant argues that Plaintiff's allegations are insufficient, as Plaintiff has "fail[ed] to allege that she actually saw or read Upfield's label statements prior to purchasing the Product." (Def's Mem. 13.)  However, drawing all reasonable inferences in Plaintiff's favor, as this Court must at the motion to dismiss stage, *see Division 1181*, 9 F.4th at 95, Plaintiff has sufficiently alleged that she saw these representations prior to purchasing.  For example, Plaintiff alleges that she relied on *specific representations*, such as "Made With Almond Oil," and the description that the Product was made "With Almond Oil," in conjunction with pictures of almond ingredients.

(*See* Compl. ¶ 68.)  In addition, Plaintiff stated that she "would not have purchased the Product" if she knew the representations were false and misleading.  (*Id*. ¶ 69.)  The most reasonable way to read Plaintiff's allegations is that she in fact read the representations on the product prior to purchasing.  Moreover, "[c]laims under GBL §§ 349 & 350 are 'not subject to the pleading-with-particularity requirements of Rule 9(b)' . . . .  They 'need only meet the bare-bones notice-pleading requirements of Rule 8(a).'"  *Manchanda v. Navient Student Loans*, No. 19-CV-5121, 2020 WL 5802238, at *5 (S.D.N.Y. Sept. 29, 2020) (quoting *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)).  Under Rule 8(a), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To satisfy this standard, the complaint must at a minimum 'disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'"  *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)).  Defendant has been given more than a fair understanding of the injury as pled by Plaintiff.

Defendant's remaining arguments are similarly unavailing.  For example, Plaintiff is not relying on "vague and conclusory statements" of her reliance upon Defendant's product marketing.  (*See* Def's Mem. 13–14.)  Instead, Plaintiff specifically alleges that she bought the product in person at a ShopRite, (*see* Compl. ¶ 61), and relied on the "front label representations" upon purchasing, (*see id*. ¶ 68).  Moreover, Defendant's reliance on this Court's opinion in *Gordon v. Target Corp*, No. 20-CV-9589, 2022 WL 836773 (S.D.N.Y. Mar. 18, 2022), is misplaced.  (*See* Def's Mem. 14.)  In *Gordon*, this Court found that the plaintiff "fail[ed] to identify a single 'specific advertisement or public pronouncement' on which she

relied in purchasing the [p]roduct" which was "fatal to her claims."  2022 WL 836773, at *13.

Here, Plaintiff has indicated which specific advertisements she allegedly relied upon, as outlined

above.

Accordingly, Plaintiff has sufficiently alleged an injury under GBL §§ 349 and 350 in her

Complaint.

b.  Materially Misleading Conduct

In its Motion, Defendant largely focuses on the second element of Plaintiff's GBL

claims, arguing that Plaintiff cannot state a cognizable claim for violations of GBL §§ 349 and

350, because "the Product's representations are not misleading as a matter of law."  (*See* Def's

Mem. 4–13.)  Specifically, Defendant argues that "the Product's front label makes no

representation regarding the relative or absolute amount of almond oil in the Product," (*id*. at 5–

7), the Product's label "including the ingredient list[] clearly precludes the possibility of

deception," (*id*. at 7–10), and "Plaintiff's allegation that the Product contains only a de minimis

amount of almond oil is wholly unfounded," (*id*. at 10–13).

To survive a motion to dismiss, plaintiffs "must do more than plausibly allege that a label

might conceivably be misunderstood by some few consumers."  *Twohig*, 519 F. Supp. 3d at 160

(quotation marks omitted) (quoting *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 WL 729883,

at *3 (E.D.N.Y. Feb. 13, 2020)).  "Instead, plaintiffs must 'plausibly allege that a significant

portion of the general consuming public or of targeted consumers, acting reasonably in the

circumstances, could be misled.'"  *Id.* (quoting *Sarr*, 2020 WL 729883, at *3); *see also*

*Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2001) (stating "the applicable legal

standard is whether a reasonable consumer, not the least sophisticated consumer, would be

misled by [a defendant's] actions").  "While it is possible for a court to decide this inquiry as a

matter of law, this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage[.]" *Duran*, 450 F. Supp. 3d at 346 (citation omitted) (collecting cases).  "Notably, whether an interpretation is unreasonable as a matter of law is generally reached at [the motion to dismiss] stage only where, for instance, a plaintiff's claims as to the impressions that a reasonable consumer might draw are 'patently implausible' or unrealistic." *Eidelman v. Sun Prods. Corp.*, No. 16-CV-3914, 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017) (quoting *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015)); *see also In re Frito-Lay N. Am. Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (explaining that claims which "border on fantasy" require "dismissal as a matter of law").

Plaintiff primarily alleges that Defendant's representation that the Product is "Made With Almond Oil" or is "With Almond Oil" is misleading because reasonable consumers would expect "a significant, non-de minimis amount of almond oil" in the Product, and Plaintiff alleges that "the ingredient list reveals a negligible amount of almond oil in relative and absolute amounts to all oil used, less than all other oils."  (*See* Compl. ¶¶ 1–3; 38–47.)  Defendant makes several arguments in response: (1) the Product's label "makes no representations regarding the relative or absolute amount of almond oil in the Product," (Def's Mem. 5); (2) the Product's ingredient label "clearly precludes the possibility of deception," (*id.* at 7); and (3) Plaintiff's allegations that the Product contains a "de minimis amount of almond oil is wholly unfounded," (*id.* at 10).  In other words, "[t]he central question here is whether the labeling of the Product as plant butter 'made with' [almond] oil would lead a reasonable consumer to believe that [almond] oil was the primary—or predominant—oil used to make the Product." *Clemmons v. Upfield US Inc.*, —F. Supp. 3d—, 2023 WL 2752454, at *5 (S.D.N.Y. Mar. 31, 2023).

At its core, both Parties dispute the import of controlling precedent governing "predominant" ingredient claims in the Second Circuit, *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018).  In *Mantikas*, the Second Circuit was reviewing a challenge to Cheez-It brand crackers, which were labeled as "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN." *Mantikas*, 910 F.3d at 634–36.  The plaintiff in *Mantikas* "purchased one or both versions of the Cheez-Its . . . believing on the basis of that label that the grain content was predominantly whole grain." *Id.* at 635.  However, the product was not in fact predominantly made of whole grain, but rather was predominantly made with enriched white flour. *Id.*  The Second Circuit concluded that it was plausible that the "large, boldfaced claims of 'WHOLE GRAIN'" would communicate to a reasonable consumer that whole grain was the predominant grain in the crackers. *Id.* at 637.  Moreover, the Second Circuit found that the misrepresentation was not cured by additional language on the front of the box giving "the precise number of grams of whole grain per serving," because this disclosure was consistent with the misleading representation that the grain used was primarily whole grain. *Id.* at 636–37.  In addition, while the ingredient list on the side of the box disclosed that whole grain was not the predominant grain, the Second Circuit stated that "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." *Id.*  Importantly, the Second Circuit was clear that *Mantikas* did not affect *all* ingredient-labeling claims, strictly distinguishing cases involving "an ingredient that obviously was not the products' primary ingredient." *Id.* at 638.  For example, crackers labeled as "made with real vegetables" would not mislead a consumer into thinking vegetables were the predominant ingredient because consumers "would 'be familiar with the fact

of life that a cracker is not composed of primarily fresh vegetables.'" *Id*. (quoting *Red v. Kraft Foods, Inc.*, 10-CV-1028, 2012 WL 5504011, at *2 (C.D. Cal. Oct. 25, 2012)).

While Defendant repeatedly attempts to distinguish *Mantikas* from the instant Action, (*see* Def's Mem. 8–10; Def's Reply 1–3), the Court is unpersuaded. *Mantikas* is directly relevant, and indeed dictates the outcome of the instant Motion. At least one other district court has examined an identical question brought by Plaintiff's counsel against Defendant, examining another Country Crock Plant Butter product "made with olive oil." *See Clemmons*, 2023 WL 2752454, at *1–2.[2] Judge Castel reasoned as follows:

> While reasonable consumers may not have a well-defined understanding of what "plant butter" is, they are likely to understand that a "plant butter" spread is made from plant-based ingredients. As in *Mantikas*, they will likely look to emphasized assertions on the packaging to discern what these ingredients are. It is therefore plausible that the representation that the plant butter is "Made With Olive Oil" could lead a reasonable consumer to conclude that the major plant-based ingredient was olive oil. In this context, the disclosure on the front of the packaging that the Product is a "79% vegetable oil spread" would not necessarily contradict the initial impression: As Upfield insists, olive oil is a constituent part of oil blend used in the Product and therefore some unknown portion of that number.

*Id*. at *6. The Court agrees with Judge Castel's reasoning and finds it applicable to this case. As alleged in the Complaint, the Product states in large letters on the front of the packaging that it is "PLANT BUTTER" with almond oil. (Compl. ¶¶ 1–2.) While the Court has not identified a

---

[2] Defendant repeatedly cites to out-of-Circuit cases that apply *Mantikas* in similar circumstances, but hold that the products at issue are not misleading. (*See* Def's Mem. 9–10 (citing *Ledezma v. Upfield US Inc.*, No. 22-CV-1618, 2022 WL 16553039 (N.D. Ill. Oct. 31, 2022)); Def's Reply 1–3 (same); Def's Not. of Supp. Authority (Dkt. No. 22) (attaching *Guzman v. Walmart Inc.*, No. 22-CV-3465, 2023 WL 3455319 (N.D. Ill. May 15, 2023)).) While Defendant is correct that this Court may consider cases in other districts around the country, these cases analyze consumer protection laws that are inapplicable to the instant Action, namely Illinois consumer protection law. Moreover, the Court has indeed identified at least one case in this district analyzing plant butter in relation to *Mantikas*, which notably neither party brought to the Court's attention after it was filed in March of 2023.

widely accepted definition for "plant butter," it is reasonable to infer that it includes plant-based ingredients, in contrast to the alternative, regular butter.  As reasoned in *Mantikas*, the Product "communicat[es] by the large, bold-faced claims" to a reasonable consumer that the plant butter in this Product is made of almond oil, a plant-based oil represented all over the front packaging in both words and images of almonds.  *See Mantikas*, 910 F.3d at 637.

In this way, Defendant's claim that Plaintiff is making a "highly specific inference[]" that a reasonable consumer would not make is misplaced.  (*See* Def's Mem. 6–7 (quoting *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83 (S.D.N.Y. Aug. 9, 2021)).)  Defendant primarily relies on *Kennedy v. Mondelez Global LLC*, No. 19-CV-302, 2020 WL 4006197 (E.D.N.Y. July 10, 2020) for this proposition, where the court found that the statement "made with real honey" on a graham cracker label "provide[d] no basis for a reasonable consumer to make" inferences about the amount of honey in the crackers.  *Id*. at *12.  However, *Kennedy* falls squarely into the subset of cases identified by *Mantikas* where the label statements discuss "an ingredient that obviously was not the products' primary ingredient."  *See Mantikas,* 910 F.3d at 638. Unsurprisingly, no reasonable consumer would assume that a graham cracker—defined as "a slightly sweet cracker made of whole wheat flour," *Kennedy*, 2020 WL 4006197, at *3—is predominantly made with honey.  A reasonable consumer would assume that graham crackers were made predominantly with flour, or at least a grain-based product.  As a non-dominant ingredient, *Mantikas* by its own rationale does not apply.  *See Mantikas*, 910 F.3d at 638 (agreeing that "a reasonable consumer would not be misled by the representation [that a cracker product was 'made with real vegetables'], because such a consumer would be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables" (quotation marks omitted)).  Indeed, while Defendant conveniently omits certain analysis, the district court in

*Kennedy* actually bolsters Plaintiff's argument that *Mantikas* applies to the instant Action.  In

*Kennedy*, the court determined that by labeling the products as "grahams" or "graham crackers,"

the defendants were not misleading consumers to believe that the product contained

predominantly "graham flour."  *Kennedy*, 2020 WL 4006197, at *9.  However, the court

specifically stated that "[t]his result would be different if the products were labelled as 'Crackers

Made with Graham Flour,'" citing *Mantikas* as precedent that would require a different result.

*Id*. at *10.  Similarly, Plaintiff here alleges that the products are "Made With Almond Oil" or are

"With Almond Oil."  (Compl. ¶¶ 1–2.)  As such, *Mantikas* indeed applies.

      Defendant makes several other arguments as to why it believes that Plaintiff cannot state

a claim under the GBL, each of which the Court finds unavailing.  First, Defendant argues that

"Plaintiff acknowledges in her Complaint that almond oil generally is not a primary ingredient in

vegetable oil spreads" and that "no reasonable consumer would interpret [the applicable

statements] to imply a certain level of almond oil in the Product . . . because almond oil is not

generally understood by consumers to be a 'vegetable oil.'"  (Def's Mem. 7.)  Notably, while

Plaintiff does allege that "vegetable oil traditionally refers to oils such as corn oil, canola oil,

cottonseed oil," and other oils, (Compl. ¶ 6), Plaintiff's allegations taken as a whole state that she

purchased the Product *because* it marketed almond oil, outside of the traditional vegetable oil

blend, (*see, e.g.*, *id*. ¶¶ 27–37 (describing the special attributes of almond oil); *id*. ¶ 64 ("Plaintiff

is one of the many consumers who seeks to consume more almond oil for reasons including

attention to their health, nutrition, and wellness."); *id*. ¶ 65 ("Plaintiff is one of the many

consumers who avoid traditional vegetable oils such as palm and canola oil because of their

detrimental effects on their health and the surrounding environment.").  And, as outlined by

*Clemmons*, while "reasonable consumers may not have a well-defined understanding of what

18

'plant butter' is" they will likely "look to the emphasized assertions on the packaging to discern what [its] ingredients are." *Clemmons*, 2023 WL 2752454, at *6.  Second, Defendant argues that, "where front-label claims are ambiguous, the ambiguity can be resolved by reference to back-of-package disclosures, such as the product ingredient list."  (Def's Mem. 8.)  This is not the case in primary ingredient cases, as "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the [product] to correct misleading information set forth in large bold type on the front of the [product]." *Mantikas*, 910 F.3d at 637.  Third, Defendant argues that "Plaintiff's allegations about the Product's almond oil content are entirely unsupported and lack any credible factual basis," because Plaintiff raises "wholly speculative" and "conclusory allegations" as to the amount of almond oil in the product based on its location in the ingredient list.  (Def's Mem. 10–11.)  However, "a reasonable consumer is not expected to have an intimate understanding of the chemical properties of [almond oil] vis-à-vis the other vegetable oils or a sense of what ratio of oils is feasible." *Clemmons*, 2023 WL 2752454, at *7. Instead, Plaintiff has plausibly alleged that the ingredients list "contradict[s], rather than confirm[s], Defendant's ['almond oil'] representations on the front of the [Product]." *Mantikas*, 910 F.3d at 637.  Given the alleged misrepresentations on the front of the packaging, the Court cannot conclude that Plaintiff's claims are "wholly speculative" or "conclusory"—instead, it confirms that almond oil is indeed not the predominant ingredient.  This is all that is required under *Mantikas*.

As such, the Court finds that Plaintiff has plausibly alleged a deceptive act under the GBL.  Accordingly, the Court denies Defendant's Motion to Dismiss the GBL claims.

### 2. Preemption

In the alternative, Defendant argues that Plaintiffs state law claims are preempted by federal law. (*See* Def's Mem. 22–24.) The Supremacy Clause "invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985). "State action may be foreclosed by express language in a congressional enactment, by implication from the depth and breadth of a congressional scheme that occupies the legislative field, or by implication because of a conflict with a congressional enactment." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001) (citations omitted); *accord Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313 (2d Cir. 2005). The party "asserting that federal law preempts a state law bears the burden of establishing preemption." *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013).

The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.* (the "FDCA"), as amended by the Nutrition Labeling and Education Act, Pub. L. No. 101-535, 104 Stat. 2353 (1990) (the "NLEA"), "forecloses a 'State or political subdivision of a State' from establishing requirements that are of the [same] type but 'not identical to' the requirements in some of the misbranding provisions of the FDCA." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014) (quoting 21 U.S.C. § 343-1(a)). Enforcement of the FDCA is largely committed to the FDA. *Id*. at 115; *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (explaining that the FDCA "leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance").

Section 343(r)(1) of the FDCA states that "[a] food shall be deemed to be misbranded" (1) where a claim on the food's labeling either "expressly or by implication . . . characterizes the level of any nutrient" required to be on the label and (2) where that claim does not conform to

certain federal regulatory requirements.  21 U.S.C. § 343(r)(1)(A); *see also Seljak v. Pervine Foods, LLC*, No. 21-CV-9561, 2023 WL 2354976, at *9 (S.D.N.Y. Mar. 3, 2023).  The required label nutrients are set by regulation and the list includes such familiar items as "saturated fat," "dietary fiber," and "protein."  21 C.F.R. § 101.9(c) (maintaining current list of nutrients that either must or may be included on a nutrition label); *see also* 21 U.S.C. §§ 343(q)(1), (q)(2).

The Food and Drug Administration ("FDA") sets rules for how these nutrients must be displayed in the Nutrition Facts panel on a food product, *see generally* 21 C.F.R. § 101.9, and it also regulates claims about these nutrients on other parts of the label, *see id.* § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling . . . may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation . . . .").  These claims are divided into two types.  "An expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'"  *Id.* § 101.13(b)(1).  An "implied nutrient content" claim is a statement that:

> (i) Describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., "high in oat bran"); or

> (ii) Suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., "healthy, contains 3 grams (g) of fat").

*Id.* § 101.13(b)(2).  The regulations describe how implied nutrient claims may appear on product labeling.  *See id.* § 101.65.  For example, the statement "contains oat bran" on a product label is an implied nutrient content claim regarding the amount of dietary fiber in the product because oat bran "is known to contain" fiber.  *Id.* § 101.65(c)(3).  The regulations clarify, however, that—absent some added meaning gleaned from context—"[c]ertain label statements about the nature of a product are not nutrient content claims" at all and are exempt from the relevant

regulatory requirements.  *Id*. § 101.65(b).  This includes "claim[s] about the presence of an

ingredient that is perceived to add value to the product, e.g., 'made with real butter,' 'made with

whole fruit,' or 'contains honey.'"  *Id*. § 101.65(b)(3).  "A 'valued ingredient' statement of this

sort is not a nutrient content claim, implied or otherwise."  *Clemmons*, 2023 WL 2752454, at *3.

      Accordingly, and as summed up by Judge Castel in *Clemmons*, "state laws respecting

nutrient content claims—the type of claim described in section 343(r)(1)—are preempted if they

impose different labeling requirements from those in the provisions discussed above.  But

'claims based on statements not falling into those categories are not preempted.'"  *Id*. at *4

(quoting *Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2010 WL 2925955, at *7 (E.D.N.Y. July

21, 2010)).

      Here, Plaintiff does not invoke any FDA requirements in the Complaint, and she does not

argue that "Made with Almond Oil" is a nutrient claim.  (*See generally* Compl.; Pl's Mem.)  In

addition, almond oil is not a label nutrient.  *Cf.* 21 C.F.R. 101.9(c).  The Complaint does not

allege that "Made with Almond Oil" implies the presence of a certain amount of any label

ingredient, despite Defendant's arguments to the contrary.  (*See* Def's Mem. 22–23.)  *See also*

*Clemmons*, 2023 WL 2752454, at *4 (citing *Korte v. Pinnacle Foods Group, LLC*, No. 17-CV-

199, 2018 WL 1508855, at *2 (S.D. Ill. Mar. 27, 2018) (finding that a "review of [sections 101.9

and 101.13] fails to reveal what nutrient, express or implied, would be implicated in labeling a

product 'extra virgin olive oil'" and thus "these provisions do not show any federal labeling

requirement for extra virgin olive oil from which a state requirement could differ")).  Instead, the

Complaint alleges that almond oil (as well as almonds in general) are increasingly popular,

stating that "almond consumption has grown several hundred percent in the past two decades"

and asserts that "[c]ompanies have responded to consumer demand and growing evidence of

benefits of almonds by making them key ingredients in packaged foods[.]"  (Compl. ¶¶ 20–26.)
"The label statement 'Made with [Almond] Oil' therefore falls into the category of 'valued
ingredient' claims—like 'made with real butter'—which are not nutrient content claims."
*Clemmons*, 2023 WL 2752454, at *4 (citing 21 C.F.R. § 101.65(b)(3)).

In opposition, Defendant agrees that the almond oil-related statements are not implied
nutrient content claims, but argues that "Plaintiff [is asking] this Court to find that the Product
label implies precisely what FDA regulations say it does not."  (Def's Mem. 23; Def's Reply 4–
5.)  However, "Upfield's argument turns the preemption provision on its head," because "the
regulations in question address statements about the set of nutrients a consumer sees in the
Nutrition Facts panel, not any statements about any ingredients whatsoever."  *Clemmons*, 2023
WL 2752454, at *4.  Section 343-1(a)(5) "preempts only claims based on statements that
expressly or by implication characterize the level of a nutrient."  *Ackerman*, 2010 WL 2925955,
at *7.  Here, simply put, Plaintiff does not allege "Made with Almond Oil" characterizes the
level of a nutrient.  *C.f. id.* at *11 ("Not every use of . . . 'healthy' on a food label conveys an
implied nutrient content claim; a violation of 21 C.F.R. § 101.65(d)(2) occurs only where it is
used in a context suggesting that a food will, because of its nutrient content, help consumers
maintain healthy dietary practices.").

Accordingly, Plaintiff's state law claims are not preempted by federal law.

### 3.  Breach of Express Warranty

"An express warranty is an affirmation of fact or promise made by the seller to the buyer
which relates to the goods and becomes part of the basis of the bargain."  *Barreto*, 518
F. Supp. 3d at 806 (quotation marks omitted).  To adequately state a claim for breach of an
express warranty under New York law, a plaintiff must plead "(1) the existence of a material

23

statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by this breach." *Wynn*, 2021 WL 168541, at *7 (quoting *Goldemberg v. Johnson & Johnson Consumer Cos.*, *Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014)).  In addition, New York law requires that the buyer, "'within a reasonable time after [s]he discovers or should have discovered any breach[,] notify the seller of breach or be barred from any remedy[.]'" *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (second alteration in original) (quoting N.Y. U.C.C. § 2-607(3)(a)).  To satisfy this notice requirement, a plaintiff must "alert [the] defendant that the transaction was troublesome," but need not "include a claim for damages or threat of future litigation." *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 282 (E.D.N.Y. Jan. 27, 2021) (alterations, quotation marks, and citation omitted).  Although "[t]he sufficiency and timeliness of the notice is generally a question for the jury," *Tomasino*, 44 F. Supp. 3d at 260 (citation omitted), to adequately plead the pre-suit notice requirement, "plaintiff[s] must provide factual allegations—such as the date and method plaintiff[s] sent a pre-suit notice—supporting the contention that [they] notified [the] defendant of the alleged breach within a reasonable time," *Grossman*, 516 F. Supp. 3d at 283.

Plaintiff has failed to adequately allege that she provided Defendant with any manner of pre-suit notice, only vaguely alleging that "Plaintiff recently became aware of Defendant's breach of the Product's warranties," "Plaintiff provides notice to Defendant . . . that it breached the express . . . warrant[y] associated with the Product," and that "Defendant received notice and should have been aware of these misrepresentations due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums."  (Compl. ¶¶ 96–98.)  These allegations are plainly insufficient to plead pre-suit notice

and avoid dismissal. *See Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 590 (S.D.N.Y. 2021) (finding allegation that "[the] [d]efendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years" to be "too conclusory and . . . unsupported by any specific factual allegations" to satisfy the notice requirement for suit (quotation marks omitted)); *Grossman*, 516 F. Supp. 3d at 283 (finding that the plaintiff's allegation that "within a reasonable time after they knew or should have known of [the] [d]efendants' breach, [the] [p]laintiff, on behalf of herself and [c]lass [m]embers, placed [the] [d]efendants on notice of their breach, giving [the] [d]efendants an opportunity to cure their breach, which they refused to do" was "insufficient to plead pre-suit notice" (quotation marks omitted)); *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735, 2018 WL 1614349, at *8 (S.D.N.Y. Mar. 30, 2018) (explaining that "[p]roper factual allegations should, at least, include the date and method by which [the] [p]laintiff afforded [pre-suit] notice to [the] [d]efendant," and dismissing claim for breach of express warranty where "[the] [p]laintiffs failed to allege any facts supporting the allegation that she notified [the] [d]efendant of the alleged breach within a reasonable time after its discovery"); *Singleton*, 2016 WL 406295, at *12 (finding that the plaintiff's allegation that "[the] [d]efendant must have been aware of [the] [p]laintiff's false and misleading advertising claims due to similar suits pending against [the] [d]efendant" to be insufficient to plead pre-suit notice because "[the] [p]laintiff was required to inform [the] [d]efendant, within a reasonable time, of the alleged breach involving his own purchase").

Plaintiff's arguments that pre-suit notice is not required or, in the alternative, that Plaintiff's original Complaint constitutes notice are unavailing. (*See* Pl's Mem. 11–12.) While Plaintiff is correct that there is a "line of New York cases suggesting that the notice requirement

does not apply to retail sales," *Neri v. R.J. Reynolds Tobacco Co.*, No. 98-CV-371, 2000 WL 33911224, at *19 (N.D.N.Y. Sept. 28, 2000) (citing *Fischer v. Mead Johnson Labs.*, 341 N.Y.S.3d 257, 259 (App. Div. 1973)), numerous courts in the Second Circuit have explained that "th[is] exception appears to be exclusively applied where the party alleges physical, in addition to economic, injury," *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143–44 (2018) (collecting cases); *see also Colpitts*, 527 F. Supp. 3d at 589 (explaining that "[b]ecause [the] [p]laintiff only alleges economic injury in the form of a price premium paid for the [p]roduct, this exception—to the extent it exists at all—is inapplicable," and dismissing breach of express warranty claim for failure to allege pre-suit notice). And, while Plaintiff is correct that there is limited authority for the proposition that a plaintiff's pleadings could constitute pre-suit notice under certain circumstances, (*see* Pl's Mem. 11–12), the Court is persuaded by Judge Failla's reasoning in *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226 (S.D.N.Y. 2020), in which she explained that the case from which this limited authority stems—*Panda Capital Corp. v. Kopo International, Inc.*, 662 N.Y.S.2d 584 (App. Div. 1997)—does not stand "for a broad rule that a filed complaint qualifies as sufficient and timely notice." 440 F. Supp. 3d at 244–45.

Accordingly, Plaintiff's claim for breach of express warranty is dismissed.[3]

---

[3] The Court notes that this is the sixth time in just the last two years where Plaintiff's counsel has made this same insufficient allegation in each complaint before this Court, providing no pre-suit notice to defendants in each case. *See Hoffman v. Kraft Heinz Foods Co.*, No. 22-CV-397, 2023 WL 1824795, at *10–11 (S.D.N.Y. Feb. 7, 2023); *Hawkins v. Coca-Cola Co.*, — F. Supp. 3d—, 2023 WL 1821944, at *8–9 (S.D.N.Y. Feb. 7, 2023); *Anderson v. Unilever U.S. Inc.*, 607 F. Supp. 3d 441, 456–58 (S.D.N.Y. 2022); *Turk v. Rubbermaid Inc.*, No. 21-CV-270, 2022 WL 836894, at *9–10 (S.D.N.Y. Mar. 21, 2022); *Gordon*, 2022 WL 836773, at *14–15. Plaintiff's counsel is on notice that the Court will not tolerate continued attempts to make this argument contrary to prevailing law, and may consider sanctions under Federal Rule of Civil Procedure 11 or 28 U.S.C. § 1927.

### 4.  Fraud Claim

"Under New York law, stating a claim for fraud requires alleging (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff."  *Wynn*, 2021 WL 168541, at *7 (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)).  And, as explained above, to adequately plead fraud, plaintiffs must also meet the particularity requirement in Federal Rule of Civil Procedure 9(b), which "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 403 (2d Cir. 2015); *see also supra* II.A.

While Plaintiff is correct that a fraud claim can plead scienter "generally," (*see* Pl's Mem. 13), courts have been clear that "the plaintiff must still allege facts that give rise to a *strong inference* of fraudulent intent."  *Colpitts*, 527 F. Supp. 3d. at 585 (emphasis added) (quoting *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 472 (S.D.N.Y. 2020)).  "A plaintiff may demonstrate this inference by (1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or (2) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Id*. (citations and quotation marks omitted).  Liberally construed, Plaintiff's sole allegation as to scienter is that Defendant "sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers."  (Compl. ¶ 45.)  However, it is well-settled that a company's general profit motive is insufficient to plead scienter.  *See, e.g.*, *Duran*, 450 F. Supp. 3d at 354 ("[S]imply alleging a defendant's self-interested desire to increase sales does

not give rise to an inference of fraudulent intent.").  And, to the extent that Plaintiff's Complaint

can be construed to claim that "[a] defendant's fraudulent intent is evinced by its failure to

accurately identify the [p]roduct on the front label, when it knew its statements to be not true nor

accurate," courts regularly find such allegations to be "conclusory" and "fall short of the Rule

9(b) standard."  *Colpitts*, 527 F. Supp. 3d at 585 (quotation marks omitted) (collecting cases).

Accordingly, Plaintiff's fraud claim is dismissed.[4]

### 5.  Unjust Enrichment Claim

"The basic elements of an unjust enrichment claim in New York require proof that

(1) [the] defendant was enriched, (2) at [the] plaintiff's expense, and (3) equity and good

conscience militate against permitting [the] defendant to retain what [the] plaintiff is seeking to

recover."  *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).  Unjust

enrichment "lies as a quasi-contract claim" that "contemplates an obligation imposed by equity

to prevent injustice, in the absence of an actual agreement between the parties."  *Georgia Malone*

*& Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012) (quotation marks omitted).  New York's

highest court has made clear, however, that "unjust enrichment is not a catchall cause of action to

be used when others fail."  *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).

Rather, the claim "is available only in unusual circumstances when, though the defendant has not

breached a contract nor committed a recognized tort, circumstances create an equitable

obligation running from the defendant to the plaintiff."  *Id.*  In other words, "[a]n unjust

---

[4] The Court again notes that Plaintiff has raised this wholly insufficient claim in five
other cases within the last two years.  *See Hoffman*, 2023 WL 1824795, at *11–12; *Hawkins*,
2023 WL 1821944, at *9–10; *Anderson*, 607 F. Supp. 3d at 462–63; *Turk*, 2022 WL 836894, at
*13–14; *Gordon*, 2022 WL 836773, at *17–18.  Plaintiff's counsel is on notice that the Court
will not allow continued attempts to make this argument contrary to prevailing law, and may
consider sanctions under Federal Rule of Civil Procedure 11 or 28 U.S.C. § 1927.

enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.* at 790–91.

The Second Circuit has stated that "[t]wo claims are duplicative of one another if they 'arise from the same facts and do not allege distinct damages.'" *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (alteration omitted) (quoting *Sitar v. Sitar*, 854 N.Y.S.2d 536, 538 (App. Div. 2008)).  Here, the unjust enrichment claim is premised on the same factual allegations as those supporting Plaintiff's other claims, and Plaintiff has not alleged distinct damages with respect to this claim.  Accordingly, the Court dismisses Plaintiff's unjust enrichment claim as duplicative.  *See, e.g.*, *Grossman*, 516 F. Supp. 3d at 284–85 (dismissing unjust enrichment claim that "duplicate[d] the plaintiff's other claims, which ar[o]se out [of] identical facts," namely "the defendant's alleged misrepresentation on the [p]roduct packaging"); *Wedra v. Cree, Inc.*, No. 19-CV-3162, 2020 WL 1322887, at *11 (S.D.N.Y. Mar. 20, 2020) (dismissing unjust enrichment claim that was "duplicative of [the] plaintiff's other claims for material misrepresentations rooted in statutory, contract, and tort law"); *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 567–68 (S.D.N.Y. 2016) (dismissing unjust enrichment claim that "rel[ied] on the same set of facts" underlying the plaintiff's claims for deceptive labeling and breach of express warranty); *Mahoney v. Endo Health Sols., Inc.*, No. 15-CV-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 10, 2016) (dismissing unjust enrichment claim that "overlap[ped] with [the plaintiff's] fraud, fraudulent concealment, express warranty, and [GBL] § 349 claims").

While Plaintiff accurately notes that a party may "set out 2 or more statements of a claim or defense alternatively or hypothetically" under Federal Rules of Civil Procedure Rule 8(d)(2), (Pl.'s Mem. 14), "it is equally true that, even pleaded in the alternative, claims for unjust

enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action," *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017).  Accordingly, Plaintiff's unjust enrichment claim is dismissed.[5]

### 6.  Jurisdiction Over Defendant as to Out-Of-State Putative Class Claims

Finally, Defendant asks the Court to dismiss any claims of out-of-state plaintiffs in the putative class because "Plaintiff has alleged no connection between the claims of the out-of-state plaintiffs she seeks to represent and her chosen forum of New York."  (Def's Mem. 25.)  However, and as admitted by Defendant, "personal jurisdiction over [D]efendant as to putative out-of-state class claims would be best assessed at the class certification stage of the proceedings, not at the motion to dismiss stage."  *Hawkins v. Well Path, LLC*, No. 19-CV-8969, 2020 WL 4287447, at *6 (S.D.N.Y. July 27, 2020) (collecting cases).  Accordingly, the Court denies without prejudice Defendant's motion to dismiss for lack of personal jurisdiction the putative out-of-state class members' claims.

### III. Conclusion

For the foregoing reasons, Defendant's Motion is granted in part and denied in part.  Specifically, Plaintiff's claims under the GBL survive, and all other claims are dismissed.  Because this is the first adjudication of Plaintiff's claims on the merits, the Court will deem this dismissal of the remaining claims as without prejudice.  To the extent Plaintiff has a good faith

---

[5] Like a broken record, the Court again notes that Plaintiff's counsel has raised the exact same, insufficient argument before this Court at least three times in the past two years.  *See Anderson*, 607 F. Supp. 3d at 463; *Turk*, 2022 WL 836894, at *14–15; *Gordon*, 2022 WL 836773, at *18–19.  The Court reminds Plaintiff's counsel of its obligations under Rule 11 and strongly counsels against raising the same, boilerplate claims again before this Court.

basis for filing an amended complaint to allege additional facts and otherwise addressing the deficiencies identified above, she must do so within 30 days of the date of this Opinion & Order.

The Court will hold a status conference on October 26, 2023, at 12:00 PM.  The Clerk of the Court is respectfully requested to terminate the pending motions at Dkt. Nos. 18 and 22.

SO ORDERED.

Dated:    September 26, 2023
          White Plains, New York

_____
          KENNETH M. KARAS
          United States District Judge